**SHERRILL v. GARTH et al.**

8 Div. 639.

Supreme Court of Alabama.

May 16, 1935.

McAfee & Nix, of Decatur, for appellant.

Wert & Hutson and Norman W. Harris, all of Decatur, for appellees.

FOSTER, Justice.

The suggestion that the bill of exceptions does not show an exception to the ruling of the court granting the motion for a new trial is not in accordance with what we think is a proper interpretation of it. The judgment of the court on that motion as it appears in

extended form is set out in full in the bill of exceptions. Such judgment states that plaintiff reserved an exception.

It is true that we have often held that when the bill of exceptions contains no recital of an exception, its recital in the judgment, not a part of the bill of exceptions, is not sufficient. Drennen Motor Co. v. Patrick, 225 Ala. 35, 141 So. 681; Southern Wood Preserving Co. v. McCamey, 218 Ala. 201, 118 So. 393; Thomas v. Carter, 218 Ala. 55, 117 So. 634; King v. Scott, 217 Ala. 511, 116 So. 681; Martin v. State, 216 Ala. 160, 113 So. 602; Ex parte Grace, 213 Ala. 550, 105 So. 707; Akin v. Chancy Bros. Hardware & Furniture Co., 207 Ala. 523, 93 So. 408 (and many others).

█It is not necessary that formal judgment shall appear in the bill of exceptions, if it is set out elsewhere in the record, provided the bill of exceptions contains a recital showing the making of the motion, the ruling on it, and the reservation of an exception. Ex parte Grace, supra.

But all of this is shown by a recital in the bill of exceptions of the making of the motion (set out in the record proper), and by setting out in it the formal judgment which shows the ruling and the exception. The judgment also appears in the record proper, as it should. It is therefore proper to give consideration to the only assignment of error here made. It is in respect to granting the motion for a new trial. The judgment of the court on that motion recites that it is sustained on the first and second grounds; that is, the refusal to give an affirmative charge for defendant as requested in writing.

The action is in unlawful detainer. The argument of counsel shows that the court granted the motion upon the idea that the demand for possession (section 8001, Code) was not preceded by a notice to quit.

Plaintiff's contention is that she rented the land to defendants for the year 1933; that they occupied it that year, under that lease, and then in the fall of the year claimed to have bought it from plaintiff in the preceding year, and denied that they had rented it from her for that year, and refused to pay her rent.

Defendants exhibited a deed from plaintiff dated January 1932, but plaintiff's evidence tended to show it was never delivered, but some one had agreed to lend defendants the amount of the purchase price, and the deed was placed in the hands of her lawyer for examination. Her bank failed, and then she died and did not make the loan.

It appears that the deed was carried to the lawyer by one who came with defendant, and after about a year or more it was returned to him who carried it to the lawyer.

█ It seems to be upon the basis of that deed that defendants claimed the land. By reason of such adverse claim and repudiation of any relation of tenant to plaintiff, she (plaintiff) on November 29, 1933, gave defendants notice in writing to vacate the land. This was equivalent to a demand for possession under section 8001, Code. The suit was filed more than ten days after the notice was served.

Appellees rely upon the authority of Myles v. Strange, 226 Ala. 49, 145 So. 313, to support the ruling of the court.

The jury found for the plaintiff. The effect was to find that defendants did rent the land from plaintiff, as she testified.

█ Defendants do not insist that the tenants in this form of action can show as a defense that they had the title when they rented the land from plaintiff, or that they have acquired plaintiff's title since doing so, because in this action the title cannot be inquired into. Jordan v. Sumners, 222 Ala. 314, 132 Ala. 427; Davis v. Pou, 108 Ala. 443, 19 So. 362; Archer v. Sibley, 201 Ala. 495, 78 So. 849.

█ Two notices or demands are not necessary, except when one is essential to the termination of the right to possession. When the possessory right has terminated for any reason, then only such demand as is required by section 8001, Code, is necessary. That demand was given. A prior notice to quit is not necessary, if the right to hold does not exist without that notice. In the case of Wells v. Sheerer, 78 Ala. 142, 146, it is observed:

"But the tenant may repudiate the relationship, and set up an adverse claim and possession in himself, which, when properly brought home, whether expressly or by implication, to the knowledge of the landlord, will put in operation the statute of limitations in the tenant's favor.

"But the rule of the common law is, that whenever a tenant undertakes to disavow the relationship in this manner, by a hostile claim of ownership in himself—such a claim, at least, as would mature into a good title under the operation of the statute of limitations, if not redressed by action—this repudiation of the loyalty of his obligations will operate as a forfeiture of the lease, at the elec-

tion of the landlord, who may proceed to consider the tenant as a stranger and a trespasser, and eject him accordingly.—Willison v. Watkins, 3 Pet. 43, 7 L. Ed. 596; Newman v. Rutter, 8 Watts [Pa.] 51; Jackson v. Vincent, 4 Wend. [N. Y.] 633; Duke v. Harper, 6 Yerg. [Tenn.] 230, 27 Am. Dec. 462."

And in Dahm v. Barlow, 93 Ala. 120, 125, 9 So. 598, it is said: "But the weight of authority seems to be that a purchase by a tenant of an adverse title, and claiming under it, is regarded as a forfeiture of his term," citing Willison v. Watkins, 3 Pet. 43, 48, 7 L. Ed. 596. From the latter case we quote as follows:

"Had there been a formal lease, for a term not then expired, the lessee forfeited it, by this act of hostility; had it been a lease at will, from year to year, he was entitled to no notice to quit, before an ejectment. The landlord's action would be as against a trespasser; as much so as if no relation had ever existed between them. * * *

"As to the assertion of his claim, the possession is as adverse and as open to his action, as one acquired originally by wrong; and we cannot assent to the proposition, that the possession shall assume such character as one party alone may choose to give it. The act is conclusive on the tenant; he cannot make his disclaimer and adverse claim, so as to protect himself, during the unexpired term of the lease; he is a trespasser on him who has the legal title; the relation of landlord and tenant is dissolved, and each party is to stand upon his right.

"It is on this principle alone, that the plaintiff could claim to recover in this action. If there was, between him and the defendant, an existing tenancy, at the time it was brought, he had no right of entry. The lessee cannot be a trespasser, during the existence of the lease, and cannot be turned out, till its termination. At the end of a definite term, the lessor has his election to consider the lessee a trespasser, and to enter on him by ejectment; but if he suffers him to remain in possession, he becomes a tenant at will, or from year to year, and in either case, is entitled to a notice to quit, before the lessor can eject him. The notice terminates the term, and thenceforth, the lessee is a wrongdoer, and holds at his peril. Woodfall's Land. & Ten. 218, 220; [Smith v. Thompson], 2 Serg. & R. [Pa.] 49.

"If the tenant disclaim the tenure, claim the fee adversely, in right of a third person, or his own, or attorn to another, his possession then becomes a tortious one, by the forfeiture of his right. The landlord's right of entry is complete, and he may sue at any time within the period of limitation; but he must lay his demise of a day subsequent to the termination of the tenancy, for before that, he had no right of entry."

That case also held that the statute of limitations began to run against the landlord's right of action from the time of the assertion of such adverse claim by the tenant known to the landlord, saying: "Having thus a right to consider the lessee as a wrongdoer, * * * we think, that under the circumstances of this case, the lessor was bound so to do." The tenant disclaimed allegiance to the landlord and attorned to another as claimant of the land. But it is observed that the same principle applies when he sets up title in himself.

This court approved and followed that case in the two cases which we have cited. That was the status and defense in Wells v. Sheerer, supra. We think it supports the ruling as originally made by the court, and not that which sustained the motion for a new trial.

■ When the tenant repudiated his relation as such to plaintiff and asserted ownership in himself, known to the landlord, the possession of the tenant then became adverse and hostile and not fiduciary, and it was not only the right but the legal duty of the landlord to sue the tenant within the period of statutory limitations.

There was no preliminary act required of the landlord to justify her right of recovery. She could then sue in ejectment; or she could give the demand prescribed by section 8001, Code, and sue by unlawful detainer.

■ The case of Myles v. Strange, supra, only applies when plaintiff's right to immediate possession depends upon a notice to quit. This does not exist at the end of the possessory right of one in possession. The adverse claim, ipso facto, terminated the possessory right of the tenant.

In accordance with that view, the judgment of the circuit court is reversed, and one here rendered, overruling the motion for a new trial.

Reversed and rendered.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.